# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3408

_____

Noreen Maki; Lucille J. Johnston;           *
Dolly Hable,                                *
                                            *
            Appellants,                     *
                                            *
      v.                                    *
                                            *
Allete, Inc., doing business as             *
Minnesota Power, individually and as        *
Administrator of Minnesota Power and        *
Affiliated Companies Retirement Plan,       *
                                            *
            Appellee.                       *

- - - - - - - - - - - - - - - - - - - - -    Appeal from the United States
                                             District Court for the
                                             District of Minnesota.

Ann M. Stenstrom,                           *
                                            *
            Appellants,                     *
                                            *
      v.                                    *
                                            *
Allete, Inc., doing business as             *
Minnesota Power, individually and as        *
Administrator of Minnesota Power and        *
Affiliated Companies Retirement Plan,       *
                                            *
            Appellee.                       *

_____

Submitted: June 16, 2004
Filed:    September 7, 2004

_____

Before WOLLMAN, HEANEY, and BOWMAN,  Circuit Judges.

_____

HEANEY, Circuit Judge.

This appeal reaches us after the district court granted the defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The plaintiffs in this consolidated action are: Noreen Maki, Lucille J. Johnston, and Dolly Hable who assert claims under Title VII, the Equal Pay Act (EPA), and the Employment Retirement Income Security Act (ERISA); and Ann M. Stenstrom who asserts claims under the Minnesota Human Rights Act (MHRA),[1] the EPA, and ERISA.  The defendant is ALLETE, Inc., formerly known as Minnesota Power & Light Company.  For the reasons listed below, we reverse and remand for proceedings consistent with this opinion.

## BACKGROUND

The plaintiffs worked for the defendant in the 1950s and 1960s until they were terminated pursuant to company policies which first prohibited married women, and then pregnant married women, from working at the company.  These policies were abrogated by the defendant after the plaintiffs were terminated, but prior to the passage of Title VII and the Pregnancy Discrimination Act (PDA), which prohibit such policies.  The plaintiffs were rehired by the defendant in the 1980s.  They have all since retired and are collecting pension benefits from the defendant.

---

[1] Stenstrom had not yet received a right to sue letter from the EEOC when she brought this action so her Title VII claims were brought under the MHRA.

The defendant's pension plan provides benefits based on years of continuous employment. Since the passage of Title VII, the defendant has amended its pension plan to include non-continuous prior service when calculating pension benefits at least twice. In 1976, the defendant amended the plan to "bridge" any prior employment if the length of the bridge was shorter than the length of the prior employment. In 1987, the plan was again amended to bridge prior employment if the break in employment was less than five years. In 1998, the most recent version of the plan was adopted: It includes both the 1976 and 1987 bridging provisions. Since 1998, various female employees of the company have requested that the defendant amend its bridging provision to include women terminated due to the defendant's past discriminatory marriage and pregnancy policies. The defendant has repeatedly refused to do so, ultimately stating in April 2002, that after a "careful review" by its Law Department, "no other changes will be made" to its bridging provisions. (Stenstrom Compl. at ¶ 16, J.A. at 21.)

The plaintiffs' prior service does not qualify under the current bridging provisions. As a result, the plaintiffs prior employment has not been included in calculating their pension benefits. In their complaints, the plaintiffs allege that the defendant intentionally structured the bridging provisions to exclude women who were terminated in the 1960s under the defendant's marriage and pregnancy policies, and that such exclusion is discriminatory on the basis of sex, marital status, and pregnancy. The district court granted the defendant's motion to dismiss as to all of the plaintiffs' claims.

## ANALYSIS

We review a district court's grant of a motion to dismiss de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001). Complaints should be liberally construed in the plaintiff's favor and "'should

not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" Rucci v. City of Pacific, 327 F.3d 651, 652 (8th Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The district court granted the defendant's motion to dismiss on two theories. First, the district court held that because the plaintiffs were terminated in the 1960s, prior to the passage of Title VII, their complaints must be dismissed because Title VII cannot be applied retroactively. Second, the district court held that the statute of limitations on discriminatory acts that took place in the 1960s had long since expired. The defendant's brief in this appeal tracks this same analysis. We read the plaintiffs' complaints quite differently, however. This case is not about discriminatory acts which took place when the plaintiffs were terminated in the 1960s, prior to the passage of Title VII or the PDA. Rather, it is about alleged discriminatory acts which took place in 1976, 1987, and 1998 when the defendant adopted allegedly discriminatory bridging policies to its pension plan and affected the plaintiffs when they retired in 1999, 2001, 2002, and 2003, respectively. Such a reading of the complaint warrants a different analysis in this case.

The district court granted the defendant's motion to dismiss as to Stenstrom and Hable based on the theory that Title VII cannot be applied retroactively. That is, because Stenstrom and Hable were first terminated prior to the passage of Title VII, the plaintiffs' claims violate the ex post facto laws. Their claims, however, do not allege a violation of Title VII at the time they were automatically terminated in the 1960s. Instead, the plaintiffs allege that the bridging provisions in the defendant's pension plan, adopted long after Title VII was passed, discriminate against them in violation of the statute. See, e.g., (Maki Compl. at ¶ 8, J.A. at 11.) ("Defendants have each discriminated and continue to discriminate against female employees because of their sex by limiting or denying eligibility and benefits under the [Retirement Plan].");  (Stenstrom Compl. at ¶ 14, J.A. at 21.) ("As Defendant well knew and

-4-

believed, the said bridging provisions would exclude the women who had been terminated due to its anti-marriage and anti-childbearing policies.") Therefore, the plaintiffs are not seeking a retroactive application of Title VII and their claims can not properly be dismissed on this ground.

The district court also held that the plaintiffs' claims are time-barred. Two lines of cases have developed in which plaintiffs allege discrimination involving actions which began before, and continued after, Title VII was passed. The district court and the defendant rely on United Air Lines, Inc. v. Evans, 431 U.S. 553 (1977), and its progeny, while the plaintiffs argue that Bazemore v. Friday, 478 U.S. 385 (1986), and its progeny are more applicable. We find both of these lines of cases illuminating, but neither of them to be precisely on point.

In Evans, a female flight attendant for United Air Lines was automatically terminated pursuant to company policy in 1968 when she married. Subsequently, in a different case brought by a different party, it was determined that United's marriage policy violated Title VII. Evans was rehired by United as a new employee in 1972 and shortly thereafter brought an action against the airline alleging that United's refusal to credit Evans with her prior service for determining seniority violated Title VII. The district court dismissed the case as time-barred and the Supreme Court affirmed that result. The Court found that the seniority system did have a continuing impact on Evans's pay and benefits, but stated that "the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." Evans, 431 U.S. at 558. The Court considered Evans's allegation, and found that there was no present violation because United's seniority system was not discriminatory: "Respondent has failed to allege that United's seniority system differentiates between similarly situated males and females on the basis of sex. . . . In short, the system is neutral in its operation." Id.

In the case before us, the district court applied <u>Evans</u> and dismissed the complaints as time-barred stating that, "[l]ike United's system, ALLETE's current system is gender neutral." (Appellant's Addendum at 8.) We disagree. Unlike the plaintiff in <u>Evans</u>, the plaintiffs in this case have alleged that the pension plan is discriminatory and results in a present violation. As noted above, the absence of such an allegation was central to the Court's analysis in <u>Evans</u>. Therefore, we find <u>Evans</u> to be inapposite to this case.

In <u>Bazemore</u>, a case on which the plaintiffs rely, a government agricultural agency merged its segregated branches in response to the passage of Title VII. The integration, however, did not eliminate the salary disparities between white and black employees. The district court and the court of appeals held that there was no violation of Title VII because the salary disparities were the result of policies that existed prior to the passage of Title VII. The Supreme Court reversed, holding that "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII." <u>Bazemore</u>, 478 U.S. at 395-96. The Court went on to distinguish <u>Evans</u>, noting that in that case the plaintiff "made no allegation that the seniority system itself was intentionally designed to discriminate. . . . Here, however, petitioners are alleging that in continuing to pay blacks less than similarly situated whites, respondents have *not* from the date of the Act forward made all [their] employment decisions in a wholly nondiscriminatory way." Id. at 396 n.6 (internal quotations omitted).

The plaintiffs in this case rely heavily on <u>Bazemore</u> and the Court's language that each paycheck consists of a new discriminatory act. We, however, do not find <u>Bazemore</u> dispositive. First, the discriminatory pay structure in <u>Bazemore</u> was adopted prior to Title VII and the central issue in that case was whether the pay structure could be found to violate the Act even though it was put into place before Title VII was passed. In the present case, the allegedly discriminatory acts – the

-6-

adoption of discriminatory bridging provisions – occurred long after Title VII was passed. Second, the Bazemore case involved paychecks, which are different from pension checks. Paychecks are payments for a prior term of work. For example, an employee works for a week, then the salary structure is applied and the paycheck is issued. Pension checks, however, are based on a pension structure that is applied only once, when the employee retires, and the pension checks merely flow from that single application. See Florida v. Long, 487 U.S. 223, 239 (1988) (distinguishing paychecks from pension checks).

In our view, there are arguably four potential points when the statute of limitations could have begun. The first is in 1976 and 1987, when the allegedly discriminatory bridging provisions were adopted by the defendant. Such a starting point, however, would ignore the fact that the plaintiffs' rights to their pension benefits had not yet vested, and the defendant could have amended the bridging provision again before the plaintiffs retired. If the plaintiffs would have brought suit in 1976 or 1987 it would, no doubt, have been dismissed as not ripe as the plaintiffs would have not yet suffered any damages. See, e.g., Auerbach v. Bd. of Educ., 136 F.3d 104, 109 (2nd Cir. 1998) (dismissing as unripe claims that provision in retirement plan was discriminatory because employees had yet to retire); Stewart v. M.M. & P. Pension Plan, 608 F.2d 776, 784-85 (9th Cir. 1979) (affirming dismissal of suit against pension plan because plaintiff had not yet retired or applied for retirement benefits). The second point in which one could argue that the statute of limitations began would be in 2002, when the defendant stated through its Law Department that it planned to make no further amendments to the bridging provision. Again, a suit brought under this theory would have been premature because the defendant was not bound by its statement and could have amended the bridging provision again before the plaintiffs retired. Third, one could argue that each pension check is a new violation with a new statute of limitations, similar to the holding in Bazemore. As discussed above, however, we find Bazemore inapposite as pension checks are distinct from paychecks and require a different analysis. Thus, the statute

of limitations did not begin to run anew with each pension check.  The fourth option, and the one we find most applicable to this case, is that the statute of limitations began running when each individual plaintiff retired and her pension benefits vested. It is at this moment that the alleged discriminatory provision of the pension plan was applied to each plaintiff and the defendant could no longer amend the bridging provision to cure such discrimination. See, e.g., McGrath v. Rhode Island Ret. Bd., 88 F.3d 12, 18 (1st Cir. 1996) (noting that the right to amend a pension plan only applies up until the time the employees rights under the plan vest).

## CONCLUSION

We hold that the district court misread the plaintiffs' complaints and dismissed this case prematurely.  Rather than alleging that the defendant discriminated against them in the 1960s when they were originally terminated, we find that the plaintiffs' complaints allege that the bridging provisions in the defendant's pension plan were adopted in a discriminatory manner resulting in a present violation of Title VII.  We further hold that the statute of limitations period began when the allegedly discriminatory pension plan was applied to the plaintiffs; that is, when each of them retired and became eligible for benefits.  As the district court is in the best position to determine the actual date the statute of limitations began running for each claim brought by each individual plaintiff, we leave the application of our holding to the district court, along with any further proceedings consistent with this opinion.

_____